IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-CV-146-SCR-WCM

WILLY WENDER ACEITUNO, YOSHI CUENCA VILLAMAR, RUBEN ARGUERA LOPEZ, EDWIN GODINEZ, and YAIR ALEXANDER NAPOLES, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN,[1] in his official capacity as Secretary of Homeland Security; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of Customs & Border Protection; U.S. BORDER PATROL; MICHAEL W. BANKS, in his official capacity as Chief of U.S. Border Control; TODD LYONS, in his official capacity as Senior Officer Performing the Duties of the Director of Immigration and Customs Enforcement; and SEAN GALLAGHER, in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for Atlanta, Georgia,

Defendants.

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

[1] Under Federal Rule of Civil Procedure 25(d), Secretary Mullin is automatically substituted for his predecessor, Kristi Noem.

## TABLE OF CONTENTS

Page

ARGUMENT

A. Plaintiffs lack standing to seek injunctive relief ..... 1

1. Plaintiffs have not alleged a consistently implemented policy of unlawful arrests" ..... 3

2. Plaintiffs' allegations of ongoing harm are insufficient to support standing ..... 6

3. Plaintiffs rely on authority that does not support their assertion of an injury in fact sufficient to support Article III standing ..... 8

4. Plaintiffs have not alleged facts supporting imminent future harm ..... 12

B. The Administrative Procedure Act divests this Court of subject-matter jurisdiction to adjudicate Plaintiffs' claims because they do not allege facts describing final agency action ..... 14

C. The Court lacks jurisdiction to grant classwide relief ..... 17

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .................................................................................... 15

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979) .................................................................................... 10

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .................................................................. 7, 8, 12

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................................... 14

*Center for Biological Diversity v. United States Dep't of Interior*,
114 F.4th 296 (D.C. Cir. 2025) .................................................................... 16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1987) ................................................................................ Passim

*City of New York v. U.S. Dep't of Defense*,
913 F.3d 423 (4th Cir. 2019) ........................................................................ 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................. Passim

*Deal v. Mercer County Bd. of Educ.*,
911 F.3d 183 (4th Cir. 2018)................................................................... 9, 10

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ............................................................................. 18, 19

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025)..................................................................... passim

*Jake's Fireworks*,
105 F.4th........................................................................................................ 15

*Kenny v. Wilson*,
885 F.3d 280 (4th Cir. 2018) ................................................................. 10, 11

*Lujan v. National Wildlife Federation*,
497 U.S 871 (1990). ....................................................................................... 4

*Lujan, v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 2

*M-J-M-A v. Hermosillo*,
822 F. supp. 3d 1147 (D. Ore. 2026) .......... 17

*Molina v. U.S. Dep't of Homeland Sec.*,
Civil Action No. 25-3417, — F. Supp. 3d —, 2026 WL 1256234 (D.D.C. May 7, 2026) .......... 5

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 8, 12

*Noem v. Vasquez Perdomo*,
146 S. Ct. 1 (2025) .......... 12, 13

*Outdoor Amusement Bus. Assoc., Inc. v. Dep't of Homeland Sec.*,
983 F.3d 671 (4th Cir. 2020) .......... 3

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025) .......... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 17

*United States v. Reyes*,
963 F.3d 482 (5th Cir. 2020) .......... 3

*Wiley v. Mayor and City Council of Baltimore*,
48 F.3d 773 (4th Cir. 1995) .......... 11, 12

**Statutes**

5 U.S.C. § 706(2) .......... 14

8 U.S.C. § 1252(f)(1) .......... 18

8 U.S.C. § 1357(a) .......... 4

8 U.S.C. § 1357(a)(2) .......... 5, 15

8 U.S.C. §§ 1221–1231 .......... 18

8 U.S.C. § 1226 .......... 19

8 U.S.C. § 1229 .......... 19

**Rules**

Federal Rule of Civil Procedure 25(d) .......... i

**Regulations**

8 C.F.R. § 287.8(c)(2)(i) .......... 4

8 C.F.R. § 287.8(c)(2)(i)-(ii) .......... 15

## ARGUMENT

### A. Plaintiffs lack standing to seek injunctive relief.

As the United States argued in its brief in support of its motion to dismiss Plaintiffs' complaint, Plaintiffs lack standing to seek injunctive relief because they have not alleged facts in their complaint from which this Court could reasonably conclude that they allege concrete future harm that is "certainly impending." Def. Br. Supp. Mot. to Dismiss, ECF 24 at 9, 14–18; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiffs attempt to counter this argument by asserting (1) they were arrested in accordance with a policy that the Department of Homeland Security has established of effecting unlawful arrests and (2) they currently experience continuing, adverse effects as a result of that policy and their unlawful arrests. These arguments fail because (1) Plaintiffs have not alleged facts from which a reasonable factfinder could conclude that the Department of Homeland Security has established a policy of unlawful arrests; (2) Even if there were such a policy, its existence would not mean Plaintiffs are likely to be rearrested unlawfully because of that policy; and (3) Plaintiffs have not described facts from which a reasonable factfinder could conclude that Plaintiffs currently experience cognizable adverse effects as a result of a policy of unlawful arrests or that they face future harm that is "certainly impending." Because Plaintiffs have not suffered an injury in fact that is both concrete and particularized, sufficient to support injunctive relief based on prospective harm, this Court should grant the United States' motion to dismiss.

As the Supreme Court has made clear, "[a]bstract injury is not enough" to support Article III standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1987). And where a plaintiff seeks injunctive relief, "past exposure to illegal conduct does not in itself show a present case or controversy," unless that exposure is accompanied by "continuing, present adverse effects." *Id.* at 102 (cleaned up). Allegations of emotional distress "'based on a nonparanoid fear'" of future harm are insufficient to support Article III standing. *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 434 (4th Cir. 2025) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Fear of future harm is not sufficient to constitute the ongoing-injury requirement because "a plaintiff can freely allege emotional distress in every case with little fear of disproof." *Id.*

A plaintiff must also demonstrate that his alleged future harm is "actual or imminent." *Lujan*, *v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up) (emphasis in original). Even "[a]n 'objectively reasonable likelihood'" that a future harm "will someday come to pass" fails to satisfy the imminent-harm requirement. *Holmes*, 156 F.4th at 429 (quoting *Clapper*, 568 U.S. at 410). Although "[t]he prospect of future injury becomes significantly less speculative" where the plaintiffs have identified policies claimed to produce future injury, those policies must be "concrete and consistently[]implemented" to help plaintiffs meet the standing requirement for

injunctive relief. *Outdoor Amusement Bus. Assoc., Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 680 (4th Cir. 2020).

1. *Plaintiffs have not alleged a consistently implemented policy of unlawful arrests.*

Plaintiffs' assertion that they have alleged a policy of unlawful arrests sufficient to support a substantial likelihood of imminent future harm fails for at least four reasons. First, the facts alleged in Plaintiffs' complaint do not support a consistently-implemented *policy* of unlawful arrests. Plaintiffs allege that out of more than 1.3 million Latino individuals in the geographic area of the class they seek to certify, five named plaintiffs were unlawfully arrested. *See* Pl. Compl., ECF 1 ¶¶ 12–16; ECF 24 at 14. Three of the named plaintiffs were arrested in Charlotte, North Carolina, during a one-week "surge" in immigration enforcement in November of 2025. ECF 1 ¶¶ 41–116. Two of them were arrested at least six weeks later in Salisbury, North Carolina. ECF 1 ¶ 102. Plaintiffs also allege that two other United States citizens were arrested unlawfully during the surge. ECF 1 ¶¶ 117–24.

The specific allegations that seven people were unlawfully arrested and the conclusory allegation that "numerous" others were arrested without reason to believe they were here unlawfully — out of approximately 425 who were arrested and more than Latino 1.3 million individuals within the geographical boundaries of the putative class — do not describe a policy supporting unlawful arrests or a policy that is consistently implemented. ECF 1 ¶¶ 39–40, 117–24. Each arrest and probable-cause analysis is "necessary fact-specific." *United States v. Reyes*, 963 F.3d

482, 488 (5th Cir. 2020). This feature of the probable-cause analysis makes it more likely that some individuals will be arrested without probable cause and less likely that the existence of such arrests fairly suggests a policy supporting them. Particularly where there is a written policy requiring probable cause, as there is here, Plaintiffs cannot simply aggregate even more than a few unlawful arrests and derive an unwritten policy that is contrary to that written policy. *Cf. Lujan v. National Wildlife Federation*, 497 U.S. 871 at 890. Under *Lujan*, *Clapper*, *Lyons*, and *Holmes*, this speculative possibility of future harm cannot confer standing. *See* ECF 24 at 14–18.

Second, Plaintiffs have not described "statements and published guidance" that demonstrate a policy to effect unlawful immigration arrests. Pl. Resp. to Def. Mot. Summ. J., ECF 28 at 9. Although Plaintiffs allege that Department of Homeland of Security officials and representatives have described "reasonable suspicion" as the sufficient quantum of proof required to make an immigration arrest, those isolated statements are insufficient to constitute a policy in the face of agency regulations requiring compliance with § 287 of the Immigration and Nationality Act, 8 U.S.C. § 1357(a). *See* 8 C.F.R. § 287.8(c)(2)(i)–(ii). This written guidance binds immigration officers and requires they conduct the individualized probable-cause assessment Plaintiffs suggest the agency has repudiated. To suggest that even dozens of arrests made without probable cause statewide is sufficient evidence of a binding unwritten policy, when the agency has a written policy requiring probable cause that explicitly binds that agency, is nonsensical.

ICE's January 2026 "Lyons Memo" also makes clear that before executing a warrantless arrest, immigration officers must have "probable cause to believe that: (1) the subject is a removable alien; *and* (2) the subject is 'likely to escape' before a warrant for his arrest can be obtained.'" *Molina v. U.S. Dep't of Homeland Sec.*, Civil Action No. 25-3417, — F. Supp. 3d —, 2026 WL 1256234, at *3 (D.D.C. May 7, 2026) (emphasis in original) (quoting Lyons Memo). The memorandum defined "likely to escape" and described seven non-exhaustive factors that an officer could consider in determining whether the subject was "likely to remain at the scene of the encounter." *Id.* Plaintiffs suggest that this memorandum's definition of "escape risk" is "flawed." ECF 28 at 9. But the factors the Lyons Memo authorizes agents to consider when determining whether an alien is an escape risk are consistent with the statute's directive to consider the "likelihood of the person escaping before a warrant can be obtained for his arrest," 8 U.S.C. § 1357(a)(2). The likelihood of escape before a warrant can be obtained is inherently tied to whether officers can readily relocate the individual, either at the scene or at an easily identifiable location based on the totality of the circumstances. The Lyons Memo is fully consistent with the statute and does not in any sense describe a policy authorizing unlawful arrests.

Third, the Department of Homeland Security's continued interest in enforcing immigration laws does not support the assertion that officers who effected unlawful arrests were doing so in accordance with Department policy. The agency has the discretion to increase its efforts to enforce federal law. It also has the discretion to use its funding to hire and train additional ICE officers and to surge

officers in any community the agency believes is home to individuals who are in this country illegally. None of these efforts supports Plaintiffs' claimed policy of violating the agency's own regulations and its January 2026 statement of compliance with § 287.

Finally, even if there were a policy of conducting unlawful warrantless arrests (there is not), that would not change the analysis. In *Lyons*, the Supreme Court assumed that "the police in Los Angeles routinely apply chokeholds" unlawfully. *Lyons*, 461 U.S. at 105. Yet because it was speculative that Lyons would encounter police again and that they would use the unlawful chokehold on him again, there was a lack of imminent harm for injunctive relief. Here, it is highly speculative that Plaintiffs will encounter ICE, be arrested without a warrant, the arrest will lack probable cause, and the arrest will be *because* of the alleged unwritten policy, in the fact of a written policy and the *Lyons* memo that direct otherwise. Attempts to manufacture standing to challenge possible future enforcement actions is always fraught, and Plaintiffs' allegations demonstrate why.

2. *Plaintiffs' allegations of ongoing harm are insufficient to support standing.*

Plaintiffs' allegations of ongoing harm related to their fear of future unlawful arrests are insufficient to support standing under *Lyons*, *Holmes*, and *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017). In *Lyons*, the Supreme Court rejected Lyons's claim of injury-in-fact based on his ongoing fear that "he would be choked in any future encounter with the police." *Lyons*, 461 U.S. at 107 n.8. The Court explained that "[i]t is the *reality* of the threat of repeated injury that is relevant to

the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* (emphasis in original). "The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.*

Likewise, the Fourth Circuit has held that a plaintiff cannot "backdoor standing" by alleging emotional distress "'based on a nonparanoid fear'" of future harm. *Holmes*, 156 F.4th at 434 (quoting *Clapper*, 568 U.S. at 416). The court held in both *Holmes* and *Beck* that the plaintiffs' claims of emotional distress and fear of further harm were not sufficient to support Article III standing. *Id.* at 434–35; *Beck*, 848 F.3d at 272.

So, too, in this case Plaintiffs' claims of ongoing harm are insufficient to support their claims of standing because each of those harms is grounded in their "subjective apprehensions" of future unlawful arrests, not changes in behavior based on "the *reality* of the threat of repeated injury." *Lyons*, 461 U.S. at 107 n.8. Aceituno's "struggle[] to watch the news," fear of resuming "normal activities," and plan to "retreat into his home if he hears that agents are present in his neighborhood," ECF 1 ¶¶ 59–63, are all intangible consequences of his past injury, grounded in his perhaps "nonparanoid fear" of future harm, *Holmes*, 156 F.4th at 434. They are not based on "the *likelihood* of a recurrence of the allegedly unlawful conduct." *Lyons*, 461 U.S. at 107 n.8 (emphasis added). The same is true of Cuenca's alleged ongoing fear of "leaving his home" and "returning to the work site," his increased awareness of his surroundings, and his "consider[ing] avoiding locations where he suspects agents may be present," ECF 1 ¶¶ 80–82; Napoles's fear

when he sees a car he believes may belong to the Department of Homeland Security, *id.* ¶ 112; Lopez's anxiety and awareness of his surroundings, *id.* ¶¶ 97–99; and Godinez's recurring "fears of re-arrest," *id.* ¶ 113–14. Each of these paragraphs describes "the emotional consequences of a prior act" that do not support injunctive relief "absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n.8. Also plainly inadequate to support injunctive relief are the instances of past harms relied upon by Plaintiffs, including a reduction in school attendance, the reluctance to frequent businesses, or other injuries experienced during and around the time period of the surge because of discrete unlawful arrests.

3. *Plaintiffs rely on authority that does not support their assertion of an injury in fact sufficient to support Article III standing.*

Plaintiffs rely on legal authority that is distinguishable and offers them no assistance. This Court should reject, for example, Plaintiffs' argument that the Fourth Circuit's standing jurisprudence excuses non-data-crime-related plaintiffs from a future-harm showing that grapples with the realistic likelihood that they will be subject to future harm. Plaintiffs are correct that *Holmes* and *Beck* both involved victims of data breaches who sought injunctive relief against the defendant company. *Holmes*, 156 F.4th at 419–20. Explaining the requirements for standing to seek injunctive relief, however, the Fourth Circuit explained, without limitation, that "'the plaintiffs must show a substantial risk that'" the future harm justifying injunctive relief "*will happen* 'in the near future.'" *Holmes*, 156 F.4th at 429 (emphasis added) (quoting *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)).

The Fourth Circuit has not decided whether a "non-informational injury," *see id.* at 430 n.20, must satisfy the statistical "floor" of "a good bit higher" than a 33% risk of future harm that applies to data-breach victims or other victims of informational injuries, *id.* at 430. But all plaintiffs seeking injunctive relief based on future harm must show a *substantial risk* that the future harm *will happen* to them in the *near future*. *Id.* at 429. The named plaintiffs are not excused from this requirement. And even if a majority of the 425 individuals who were arrested during the surge were arrested unlawfully, that number would represent .12% of the more than 168,800 Latino individuals in Charlotte. *See United States Census Bureau Quick Facts*, North Carolina (2025).[2] A .12% chance of future harm is well too speculative to be described as a "substantial risk" that the future harm will happen to any particular person.

The authority Plaintiffs rely upon for a more relaxed future-harm showing also does not support their standing claims. In *Deal v. Mercer County Bd. of Educ.*, for example, the plaintiffs challenged a school system's Bible-education program as unconstitutional, in violation of the First Amendment's Establishment Clause. 911 F.3d 183, 186 (4th Cir. 2018). When the student plaintiff chose not to participate in the Bible classes, she was marginalized and harassed. *Id.* The student's parents eventually enrolled her in another school district because of the harassment. *Id.* Reversing the district court's dismissal of the plaintiffs' complaint for lack of standing, the Fourth Circuit held that the plaintiffs described ongoing injuries,

[2] Available at https://www.census.gov/quickfacts/table/NC/PST045225.

including expenditures related to the student's school attendance in a neighboring school district and ongoing feelings of marginalization and exclusion. *Id.* at 188. Because the student described ongoing harm and were not seeking relief "just for past injuries or from some speculative future injury," the court held that the plaintiffs did not have to satisfy the "the imminence requirement" described by the Supreme Court in *Clapper*. *Id.*

*Deal* explicitly declined to address the future-harm theory of standing and instead held that the plaintiffs had described ongoing harm related to the student plaintiff's continuing need to attend school in a different school district and her continuing marginalization within her community. *Deal*, 911 F.3d at 188. *Deal* did not grapple with the speculative nature of future harm at all. *See id.* It does not, therefore, offer Plaintiffs any assistance.

*Kenny v. Wilson*, 885 F.3d 280 (4th Cir. 2018), is also no help to Plaintiffs. The Fourth Circuit in *Kenny* upheld the standing of South Carolina students who had previously been arrested and charged under two South Carolina criminal statutes that the students alleged were unconstitutionally vague. *Id.* at 284. The students asserted that the laws chilled their exercise of free expression, forcing them to refrain from exercising their First Amendment right to free expression or risk arrest and prosecution. *Id.* Applying a legal framework that governs challenges to "the constitutionality of a criminal statute," *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979), the Fourth Circuit held that those plaintiffs who still attended school in South Carolina had described a credible threat of future harm by alleging that the school regularly enforced the two statutes

against students and those plaintiffs were among the group of students most likely to be targeted for prosecution. *Kenny*, 885 F.3d at 288–89.

Although *Kenny* addressed the plaintiffs' fear and risk of future arrest, it did so in the context of a legal framework that authorizes the suit to move forward as long as the threat "is not 'imaginary or wholly speculative,' 'chimerical,' or 'wholly conjectural.'" *Id.* at 288 (citations omitted). Perhaps not surprisingly, given the constitutional liberty interests at stake, that standard is far more relaxed than the standard that applies to the question of Plaintiffs' standing and requires a "substantial risk" of imminent future harm. *Holmes*, 156 F.4th at 429. *Kenny* does not, therefore, support Plaintiffs' standing argument.

Likewise, the Fourth Circuit's decision in *Wiley v. Mayor and City Council of Baltimore*, 48 F.3d 773 (4th Cir. 1995), fails to support Plaintiffs' effort to claim Article III standing. In *Wiley*, the plaintiffs included both individual police officers who alleged that they were compelled to undergo a polygraph examination as a condition of continued employment, and the union that represented police officers in the City of Baltimore. *Id.* at 774–75. In response to a challenge to the plaintiffs' standing under *Lyons*, the Fourth Circuit stated that it "might be inclined to agree" that the individual officers lacked standing based on their past compelled participation in polygraph examinations. *Id.* at 775. Because the union was also a plaintiff in the lawsuit, however, the court held that standing to challenge the alleged polygraph policy existed because there was "a sufficient likelihood that some members" of the local union would, "in the future, be affected by this policy." *Id.* at 775–76. The court did not address the imminence requirement described in *Clapper*

in 2013. *See id.* *Wiley* does not support Plaintiffs' assertion of standing because Plaintiffs are all individuals who allege a discrete unlawful arrest and no reason to believe that they will be arrested again in the near future beyond their membership in a class of more than 168,000 Latino individuals within Charlotte alone.

4. *Plaintiffs have not alleged facts supporting imminent future harm.*

Even if Plaintiffs had alleged facts sufficient to support a non-speculative future injury, they have not alleged facts describing a substantial risk that the future harm justifying injunctive relief "*will happen* 'in the near future.'" *Holmes*, 156 F.4th at 429 (emphasis added) (quoting *Murthy*, 603 U.S. at 58). Aceituno's interactions with Department of Homeland Security agents twice in one day during a week-long surge are not evidence that he will be subject to an unlawful arrest now that the surge is over. And Plaintiffs do not allege that Aceituno was twice subject to unlawful arrest. There are no allegations that anyone else has even encountered Department of Homeland Security officers twice, let alone that they have been subject to warrantless arrests multiple times. Both the Supreme Court and the Fourth Circuit have considered the lack of any allegation of repeated harm by a plaintiff to weigh against a finding that the plaintiff has demonstrated an injury in fact. *See Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (2025) (Kavanaugh, J., concurring); *Lyons*, 461 U.S. at 107–09; *Holmes*, 156 F.4th at 429–33; *Beck*, 848 F.3d at 275–76.

The Supreme Court in *Lyons* rejected the argument that Lyons's allegation that the Los Angeles Police Department "routinely applied" unconstitutional

chokeholds was sufficient to support his standing to seek injunctive relief against that routine practice. *Lyons*, 461 U.S. at 107–09. The Court characterized Lyons's allegations as "*far short* of the allegations that would be necessary to establish a case or controversy" where five months had elapsed since Lyons's chokehold incident with no further "unfortunate" encounters between Lyons and the police. *Lyons*, 461 U.S. at 107–09. Justice Kavanaugh recently explained in concurring with the Court's decision to grant a stay in a similar case as Plaintiffs', alleging a policy and pattern-and-practice of indiscriminately stopping individuals suspected of immigration violations, the plaintiffs' past experience of harm gave them "no good basis" to believe that they would be unlawfully stopped in the future and "certainly no good basis for believing that any stop of the plaintiffs [was] imminent." *Vasquez Perdomo*, 146 S. Ct. at *2.

This Court should reject Plaintiffs' argument that the risk of their future unlawful arrest is imminent because they were arrested while engaging in ordinary daily activities and they "are sure to re-engage" in those ordinary daily activities. ECF 28 at 13–14. That it was only their perceived race or ethnicity that, according to Plaintiffs, triggered their arrests undermines any argument, in a state in which more than 1.3 million Latinos live, that their unlawful re-arrest "*will happen* in the near future" while Plaintiffs are going about their activities of daily living. *Holmes*, 154 F.4th at 429 (emphasis added) (cleaned up).

Plaintiffs have not alleged facts from which a reasonable factfinder could find that Aceituno, Cuenca, Lopez, Napoles, or Godinez faces a substantial risk that he will be subject to an unlawful arrest at the hands of Department of Homeland

Security officers in the near future. The Lyons Memo embraces the standard for arrest described in § 287 of the Immigration and Nationality Act. Any confusion that might have been caused by imprecise or incorrect statements of that standard by other officials before January 28, 2026, was put to rest that day when the Lyons Memo was issued and clarified that all officers required to have "reason to believe" that the individual to be arrested without a warrant "is in the United States in violation" of the immigration laws *and* "is likely to escape before a warrant can be obtained for his arrest." *See* 01/28/26 Lyons Memo.[3] Because Plaintiffs have not described facts supporting imminent concrete future harm, this Court should dismiss their complaint for lack of standing.

**B. The Administrative Procedure Act divests this Court of subject-matter jurisdiction to adjudicate Plaintiffs' claims because they do not allege facts describing final agency action.**

Plaintiffs' arguments that their complaint alleges final agency action are not persuasive. This Court lacks subject-matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 706(2), unless the alleged facts describe an agency action that is "final." *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019). To constitute final agency action, the agency's action (1) must "mark the consummation of the agency's decisionmaking process"; and (2) be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178–79 (1997).

[3] Available at https://www.courthousenews.com/wp-content/uploads/2026/03/todd-lyons-dc-immigration-arrests-jan-memo.pdf.

When determining whether an agency action is final, the Fourth Circuit looks first "to the statutes and regulations that govern the agency action at issue." *Jake's Fireworks*, 105 F.4th at 631. "When examining the consummation prong of *Bennett*, the decisionmaking processes set out in an agency's governing statutes and regulations are key to determining whether an action is properly attributable to the agency itself or represents the culmination of that agency's consideration of an issue." *Id.* (cleaned up). "An action that is 'informal, or only the ruling of a subordinate official, or tentative' ordinarily does not conclude an agency's decisionmaking process." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967)).

For the reasons described in the United States opening brief in support of its motion to dismiss, Plaintiffs do not allege a final agency action. *See* ECF 24 at 2—25. Immigration officers are bound by the standard for warrantless arrests described in § 287 of the Immigration and Nationality Act and its implementing regulations. 8 U.S.C. § 1357(a)(2); 8 U.S.C. § C.F.R. § 287.8(c)(2)(i)–(ii). The Lyons Memo, which was issued in the wake anecdotal and media reports of unlawful arrests during immigration-enforcement efforts in Charlotte and in other urban areas, affirms that standard. That memo also put to rest any confusion caused by representatives who referred to "reasonable suspicion," instead of "reason to believe," as the standard for determining that someone could be lawfully arrested for an immigration violation without a warrant.

Although Plaintiffs allege, as they assert, "a single policy, causing a single species of harm," ECF 28 at 22, they rely on media and personal reports of discrete

instances of allegedly unlawful arrests. *See* ECF 1 ¶¶ 34–40, 145–52, 161–63. They glean from these instances and the statements of certain officials articulating an incorrect legal standard for warrantless arrests that there is an agency policy authorizing unlawful arrests. But ICE made more than 5,000 street arrests per week nationwide between June of 2025 and January of 2026, according to one organization that tracks deportation data. *See* Graeme Blair and David Hausman, *One Year of Immigration Enforcement Under the Second Trump Administration*, Deportation Data Project (April 7, 2026).[4] None of the facts alleged by Plaintiffs suggests that the number of unlawful arrests made by Department of Homeland Security personnel came anywhere near the level that one would expect if the agency had established a policy authorizing immigration arrests without the findings required by § 287. At most, Plaintiffs allege facts suggesting that *some portion* of the more than 20,000 immigration-related "street arrests" made nationwide each month were unlawful. But this kind of extrapolation of individual instances of unlawful arrests to conclude the existence of a policy authorizing unlawful arrests does not describe final agency action. *See Center for Biological Diversity v. United States Dep't of Interior*, 114 F.4th 296, 309 (D.C. Cir. 2025) (cannot aggregate multiple permits into a single agency action based on inferred policy).

---

[4] Available at https://deportationdata.org/analysis/immigration-enforcement-first-year.html.

That other district courts have found final agency action based on complaint allegations and evidence presented to those courts is also not persuasive. First, those courts were assessing different complaint allegations and evidence. Second, those courts did not appear to grapple with the statistics the United States has presented suggesting that the incidence of unlawful arrests, considered in the light of Plaintiffs' allegations, likely does not approach the incidence level one would expect if there were a policy condoning unlawful arrests. *See*, *e.g.*, *M-J-M-A v. Hermosillo*, 822 F. Supp. 3d 1147, 1177–82 (D. Ore. 2026); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1236 (D. Colo. 2025). At bottom, Plaintiffs' complaint does not allege facts supporting the existence of a policy or a sufficiently broad pattern and practice to support the finding of agency final action, particularly in the face of written policies that state exactly the opposite of the unwritten policy Plaintiffs allege. For this reason, this Court lacks subject-matter jurisdiction over Plaintiffs' Administrative Procedure Act claims.

**C. The Court lacks jurisdiction to grant classwide relief.**

As the United States argued in its opening brief in support of its motion to dismiss, this Court lacks jurisdiction to issue classwide relief. Most fundamentally, the named plaintiffs do not have standing to assert their claims, as argued above. As the Supreme Court has explained, "[e]very class member must have Article III standing" because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Even if Plaintiffs had standing and Plaintiffs alleged final agency action, classwide relief would remain unavailable. Classwide injunctive relief would be impermissible because § 242(f)(1) of the Immigration and Nationality Act prevents courts, with the exception of the Supreme Court, from enjoining Defendants on behalf of a class of individuals related to "the operation of [8 U.S.C. §§ 1221–1231]." *See* 8 U.S.C. § 1252(f)(1). Although Plaintiffs assert that application of this prohibition is limited to cases in which a party seeks to enjoin actions taken only under the statutory provisions identified, the Supreme Court has explained that the phrase, "operation of," in § 242(f)(1) "is best understood to refer to the Government's efforts to "*enforce or implement*" the "*relevant statutes*." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022) (emphasis added). The Court stated further that "the 'operation of the provisions' is a reference 'not just to the statute itself but to the way that it is being carried out.'" *Id.* (brackets omitted). Section 242(f)(1) does not, therefore, simply prohibit courts from enjoining actions taken under the specified statutes. It also, according to the Supreme Court, enjoins actions taken to enforce or implement those statutes.

In addition to recognizing the application of § 242(f)(1) to actions taken to implement the referenced statutes, the Court in *Aleman Gonzalez* also recognized that the referenced statutes govern "the inspection, apprehension, examination, and removal of aliens." *Id.* at 549–50. Taken together, these statements of the Court mean that the prohibition against classwide injunctive relief described in § 242(f)(1) applies to bar any court except the Supreme Court from enjoining actions taken by the federal government to inspect, apprehend, examine, and removes aliens.

Because the classwide injunctive relief sought by Plaintiffs in this case would unlawfully limit the government's ability to conduct warrantless arrests and would restrict "the way that" 8 U.S.C. §§ 1226 and 1229 are "being carried out" by the government on a classwide basis, this Court lacks authority to grant Plaintiffs the classwide injunctive relief they seek. *Aleman Gonzalez*, 596 U.S. at 550.

## **CONCLUSION**

For all of the reasons described above and for the reasons stated in the United States' opening brief in support of its motion to dismiss, this Court should dismiss Plaintiffs' complaint with prejudice.

Respectfully submitted, this 17th day of July, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

s/Amy E. Ray
Assistant United States Attorney
N.C. Bar No. 22762
Room 233, US Courthouse
100 Otis Street
Asheville, NC 28801
Tel: 828-259-0662
Fax: 828-271-4327
E-mail: Amy.Ray@usdoj.gov

## CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024 and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 17th day of July, 2026.

s/Amy E. Ray
Assistant United States Attorney